UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| **DERIC STUBBS,** | ) Civil No. 1:20-cv-00311 |
| Plaintiff, | ) |
| v. | ) |
| | ) **COMPLAINT AND** |
| **CITY OF GREENSBORO,** | ) **DEMAND FOR JURY TRIAL** |
| Defendant. | ) |

Plaintiff, Deric Stubbs ("Stubbs" or "Plaintiff"), by and through counsel, brings this action for violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* and the Americans with Disabilities Act of 1990 42 U.S.C. 126 § 12101 et. seq., against City of Greensboro ("CG" or "Defendant").

## NATURE OF PLAINTIFF'S CLAIMS

1. Defendant unlawfully interfered with Plaintiff's FMLA rights by unlawfully harassing Plaintiff for medical recertification more frequently than every 30 days in violation of in violation of 29 C.F.R. § 825.308.

2. Defendant unlawfully interfered with Plaintiff FMLA rights by failing to reinstate Plaintiff to the same job position he held prior to his utilization of medically certified FMLA leave or an equivalent job with equivalent pay, benefits, and other terms and conditions of employment.

3. Defendant unlawfully retaliated against Plaintiff in violation of the FMLA by terminating his employment after Plaintiff objected to Defendant's action in reassigning him to a non-equivalent work schedule.

4. Defendant subjected Plaintiff to unlawful discrimination on the basis of his race, African American, in violation of Title VII.

5. Defendant subjected Plaintiff to unlawful discrimination on the basis of his disability of debilitating migraines in violation of the ADA.

## THE PARTIES

6. Plaintiff is an adult individual who is a resident of Kernersville, North Carolina.

7. Defendant is a government entity authorized under the laws of the State of North Carolina.

## JURISDICTION AND VENUE

8. The Court has original federal question jurisdiction under 28 U.S.C. § 1331 for claims brought under the FMLA for unlawful interference and retaliation and the claims brought under Title VII and the ADA for unlawful discrimination.

9. The Court has personal jurisdiction because Defendant is a government entity located within this judicial district.

10. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Greensboro, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

11. At all times hereinafter mentioned, CG has been an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

12. At all times hereinafter mentioned, Plaintiff was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2), meaning that Defendant employed him for at least 12 months, and he performed at least 1250 hours of service with Defendant during the 12-month period preceding the termination of his employment.

13. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. §2000e(f).

14. Defendant is an "employer" within the meaning of 42 U.S.C. §2000e(b).

15. At all relevant times, Defendant was a "covered entity" engaged in an industry affecting commerce and employed at least (15) employees each working day.

16. At all relevant times, Plaintiff was a "qualified individual with a disability" as defined by 42 U.S.C. § 12111(8).

17. At all relevant times, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

18. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on disability and retaliation on August 5, 2019. The EEOC issued a Notice of Suit Rights on January 6, 2020 and Plaintiff timely brings this action within ninety (90) days of his receipt thereof.

## PLAINTIFF'S FACTUAL ALLEGATIONS

19. Defendant employed Plaintiff in or about March 2017 as a Utilities Night Services Representative for the Company's Water Department.

20. In or about October 2018, Plaintiff began experiencing severe and debilitating migraine headaches that prevented him from performing his job duties. As such, Plaintiff requested time off for this sudden onset of migraines in order to seek medical treatment.

21. On or about October 17, 2018, Plaintiff's healthcare provider certified him for intermittent FMLA leave to accommodate Plaintiff's severe and debilitating migraine headaches. In the certification, Plaintiff's healthcare provider noted that Plaintiff had an "apparent onset [of] migraine headaches," which would require "[Plaintiff] to be absent from work during flare-ups."

22. On or about February 20, 2019, Plaintiff texted Danny Simmons ("Simmons"), Plaintiff's Operations Support Supervisor, stating that he was experiencing a migraine and needed to use FMLA leave that day.

23. On or about February 26, 2019, Plaintiff texted Simmons to request paid time off because he needed to take his mother to her doctor. Following this request, Simmons threatened Plaintiff's employment. Specifically, Simmons informed Plaintiff that he has been trained to recognize FMLA abuse and that Plaintiff needed to stop missing time at work.

24. On or about March 5, 2019, although having flu-like symptoms, Plaintiff went to work since Simmons had threatened to terminate his employment. However, after working, Plaintiff's flu-like symptoms worsened. Therefore, Plaintiff requested paid time off for March 6, 2019.

25. On or about March 6, 2019, Plaintiff sought medical treatment for his condition and was diagnosed with an infection and prescribed a regiment of antibiotics. Plaintiff's treating

physician directed him to remain out of work and away from other people until March 8, 2019. That same day, Simmons called Plaintiff to inform him that his request for paid time off was denied. Plaintiff attempted to explain that he had medical certification from his doctor and was more than willing to provide it to him. However, Simmons stated that it did not matter whether Plaintiff provided medical certification, and that Plaintiff was to receive a disciplinary occurrence for his absence per Greensboro's leave policy.

26. On or about March 8, 2019, Plaintiff went to work to avoid further harassment and occurrences. However, shortly after arriving, Plaintiff experienced a migraine flare-up. Plaintiff submitted a paid time off request for the rest of the day through March 10, 2019 and notified Simmons via text his need to leave work due to his severe migraine headache. Simmons replied "10-4" and "I'll make note of it but like I told you I can't code it as that until medical services sends me the updated version of the FMLA letter . . ." Simmons was referring to a text message he sent Plaintiff in which he told Plaintiff that his FMLA certification needed to be updated because it only covered the dates ranging from August 10, 2018 through August 14, 2018.

27. On or about March 11, 2019, Plaintiff's day off, Simmons called and texted Plaintiff to notify him that his paid time off request for March 8, 2018 through March 10, 2018 was denied due to a labor shortage, despite knowing that Plaintiff missed those days due to a severe migraine headache. Of course, a "labor shortage" would be no reason to justify denying a request for paid leave when the requested dates for leave had already passed.

28. On or about March 12, 2019, Plaintiff required emergency medical treatment for his debilitation migraine headache due largely to Simmons' continued harassment regarding his use of FMLA leave. Plaintiff's medical provider instructed Plaintiff to remain out of work from March 13, 2019 through March 15, 2019 due to this migraine flare-up. Plaintiff informed

5

Simmons' of his emergency medical treatment via text, attaching medical certification for FMLA leave during the stated days.

29. On or about March 18, 2019, Plaintiff returned to work and met with Simmons and the 2nd Shift Coordinator, James Boughs ("Boughs"). In the meeting, Simmons and Boughs informed Plaintiff that his absences during March 13 and 14 would be counted as disciplinary occurrences against Plaintiff despite the provided medical certification because of a "labor shortage." Simmons further informed Plaintiff that any additional absences will result in his suspension. Later that day, Plaintiff began experience another severe migraine brought on by the stress of Defendant's handling of his medical condition.

30. On or about March 19, 2019, Plaintiff informed Simmons that he could not work due to a severe migraine that began the night prior. Simmons responded that Plaintiff would have to work that weekend to make up the absences.

31. On or about March 20, 2019, Plaintiff's healthcare provider sent medical certification to the City of Greensboro's Human Resource Department. The certification states that Plaintiff would need continuous and intermittent FMLA leave approximately 1-4 times per month for 3-4 days per episode. On the same day, Plaintiff texted Simmons informing him that he had a migraine and required FMLA leave.

32. On or about March 23, 2019 and March 24, 2019, Plaintiff had debilitating migraine symptoms. Plaintiff utilized FMLA leave and notified Simmons by text message before each shift.

33. On March 27, 2019, Plaintiff's next scheduled workday, Plaintiff informed Simmons by text that he was experiencing another chronic migraine and that he required FMLA leave. Simmons did not respond to Plaintiff's text.

6

34. On March 28, 2019, Plaintiff informed Simmons that he was experiencing migraine symptoms and required FMLA leave. Simmons responded: "10-4."

35. On April 1, 2019, Plaintiff's next scheduled workday, Simmons texted Plaintiff approximately four hours before Plaintiff's shift stating: "I hope you are feeling well and if you are able to make it in to work today, I need to see you after you punch in." Plaintiff responded that he was having migraine symptoms and required FMLA leave for the day. Simmons replied that he could no longer accept text messages as notification of FMLA leave and that Plaintiff would have to call dispatch before his shift from now on.

36. On April 5, 2019, Plaintiff's next scheduled workday, and each scheduled workday until April 19, 2019, Plaintiff experienced chronic migraines, preventing him from performing the material duties of his job. Thus, Plaintiff called in to dispatch before each shift to notify Defendant of his absence and need for leave. Plaintiff also texted Simmons on each workday, notifying him of his absence.

37. In a letter dated April 10, 2019, Defendant, through its Human Resources Department, informed Plaintiff that he failed to contact his supervisor (Simmons) "through proper communication methods of the status of his return." The letter further stated that Plaintiff's leave exceeded the medical certification provided and requested updated certification and threatened corrective action "up to and including termination." This request for recertification was made less than 30 days after Plaintiff's healthcare provider sent Defendant Plaintiff's updated medical certification on March 20, 2019.

38. From April 11, 2019 through April 17, 2019, Plaintiff experienced severe migraines that required him to take FMLA leave on his scheduled workdays during this period.

7

39. On or about April 19, 2019, Plaintiff's next scheduled workday, upon his return to work from FMLA leave, Defendant refused to reinstate Plaintiff to the position he held before certified FMLA leave and informed him that he had to work 1st shift or resign. Plaintiff objected to the newly assigned schedule.

40. On or about June 17, 2019, Defendant unlawfully terminated Plaintiff's employment for not working his newly assigned 1st shift.

41. During Plaintiff's employment with Defendant, multiple similarly situated Caucasian employees working the 2nd shift have taken leave for extended periods of time and were returned to the same shift, job title, and work duties. Those similarly situated Caucasian employees did not face unnecessary and constant text messages, calls, and voicemails from their supervisors regarding FMLA medical recertification and return status.

42. Defendant unlawfully discriminated against Plaintiff base on his race, African American, and because of his chronic disability.

## Plaintiff's First Cause of Action

### (Violation of the FMLA – Interference)

43. Plaintiff incorporates by reference Paragraphs 1 through 42 of his Complaint.

44. Defendant interfered with Plaintiff's rights under the FMLA by unlawfully harassing Plaintiff for medical recertification more frequently than every 30 days in violation of in violation of 29 C.F.R. § 825.308

45. Defendant unlawfully interfered with Plaintiff FMLA rights by failing to reinstate Plaintiff to the same job position he held prior to his utilization of medically certified FMLA or an equivalent job with equivalent pay, benefits, and other terms and conditions of employment.

46. Defendant's actions were intentional, willful, and/or taken with reckless disregard of Plaintiff's rights under the FMLA.

47. Plaintiff suffered damages as a result of Defendant's unlawful conduct.

## Plaintiff's Second Cause of Action

**(Violation of the FMLA - Retaliation)**

48. Plaintiff incorporates by reference paragraphs 1 through 47 of his Complaint.

49. Defendant unlawfully retaliated against Plaintiff in violation of the FMLA by terminating his employment after Plaintiff objected to Defendant's action in reassigning him to a non-equivalent work schedule.

50. Defendant's actions were intentional, willful, and/or taken with reckless disregard of Plaintiff's rights under the FMLA.

51. Plaintiff suffered damages as a result of Defendant's unlawful conduct.

## Plaintiff's Third Cause of Action

**(Violation of Title VII – Discrimination based on Race)**

52. Plaintiff incorporates by reference Paragraphs 1 through 51 of his Complaint.

53. Defendant's actions as described in detail in the factual allegations above subjected Plaintiff to unlawful discrimination on the basis of his race, African American in violation of Title VII.

54. Defendant's actions were intentional, willful, and/or undertaken in reckless disregard of Plaintiff's right as protected by Title VII.

55. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

### Plaintiff's Fourth Cause of Action

### (Violation of ADA – Discrimination based on Disability)

56. Plaintiff incorporates by reference Paragraphs 1 through 55of his Complaint.

57. Defendant's actions as described in detail in the factual allegations above subjected Plaintiff to unlawful discrimination on the basis of his disability, debilitating migraines, in violation of the ADA.

58. Defendant's actions were intentional, willful, and/or undertaken in reckless disregard of Plaintiff's right as protected by the ADA.

59. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a) An Order pursuant to the FMLA that Defendant reinstate Plaintiff to the position he held prior to the utilization of his medically certified FMLA leave, or to a comparable position with full seniority, benefits and wages, or front pay to Plaintiff in lieu thereof;

b) An Order pursuant to the FMLA, Title VII and the ADA that the Defendant pay Plaintiff all lost wages, benefits, compensation, and monetary loss suffered because of Defendant's unlawful actions;

c) An Order pursuant to the FMLA that Defendant pay Plaintiff liquidated damages;

d) An Order ordering Defendant to pay punitive damages under Title VII and the ADA and;

e) An Order pursuant to Title VII and the ADA that Defendant pay Plaintiff compensatory damages.

f) An Order awarding the costs of this action;

g) An Order awarding reasonable attorneys' fees;

h) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

i) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted this 3rd day of April, 2020.

/s/ Jason Chestnut
Jason Chestnut, NCSB#52066
Philip J. Gibbons, Jr., NCSB #50276
Craig L. Leis NCSB #48582
**GIBBONS LEIS, PLLC**
14045 Ballantyne Corporate Place, Ste. 325
Charlotte, NC 28277
Telephone: 704-612-0038
Email: jason@gibbonsleis.com
phil@gibbonsleis.com
craig@gibbonsleis.com

*Attorneys for Plaintiff*